IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INSTITUTE FOR MOTIVATIONAL LIVING, )
INC., )
 )
      Plaintiff, )
 )
  vs. ) Civil Action No. 06-0828
 )
SYLVAN LEARNING CENTER, INC., )
 )
      Defendant. )

MEMORANDUM OPINION and ORDER

Gary L. Lancaster,
District Judge.
                                      February 7, 2008

     This is a breach of contract case. Plaintiff, Institute for Motivational Living, Inc. ("IML") alleges that defendant, Sylvan Learning Center, Inc. ("Sylvan"), breached the parties' license agreement, infringed on IML's copyrighted material in violation of the Copyright Act, 17 U.S.C. § 101 et seq., and breached the implied covenant of good faith and fair dealing.

     IML has filed a motion for temporary restraining order and preliminary injunctive relief [Doc. No. 106]. IML seeks, inter alia, to prevent Sylvan from continuing to use and disseminate IML's copyrighted material. For the reasons set forth below, the motion will be granted in part and denied in part.

I.  BACKGROUND

IML is a training and publishing company that develops and publishes assessments for education, business and personal growth, including testing materials that assess learning styles and personality types. Sylvan provides tutoring services to children, primarily in the areas of reading and mathematics, through personalized lesson programs. Sylvan offers students a "Study Skills Program," which is designed to help them develop strategies to achieve their goals.

IML and Sylvan entered into an agreement in 2001 entitled "Plan of Action and Agreement to Engage Customization Services" in which the parties agreed to develop customized testing materials for students, as well as customized training materials for instructors. These materials, collectively referred to as the "Assessments," are IML's copyrighted material. The Plan of Action provided that Sylvan would pay IML a royalty of $3.50 for each student who took the customized Assessment tests.

IML and Sylvan executed a "License Agreement Governing Use of Customized Materials" (hereinafter, "License Agreement"), in connection with the Plan of Action, which essentially provided that Sylvan could reproduce and use IML's Assessments in its student and instructor training programs.[1] The parties amended the License

---
[1]
The License Agreement provides, in pertinent part:
    1) UPON FULL PAYMENT OF ALL CHARGES FOR CUSTOMIZATION, Client shall have the exclusive right to reproduce and

2

Agreement through addenda in August 2002 and July 2004.

The Second Addendum reduced the royalty payments to $1.00, required Sylvan to establish an EOS System for accurate tracking of the Assessments, mandated that the Assessments be part of Sylvan's Study Skills Program, and required Sylvan to use its best efforts to promote the Assessments to all other Sylvan students (outside the Study Skills Program)in all of its learning centers.

On June 22, 2006, IML initiated this action alleging that Sylvan breached the License Agreement and infringed upon IML's copyrighted Assessments. On January 18, 2007, Sylvan advised IML, via letter, that it intended to terminate its business relationship with IML and cease use of the Assessments effective January 31, 2007. Sylvan advised IML in its January 18, 2007 letter that limited use of the Assessments may occur beyond February 1, 2007. Sylvan then sent an e-mail blast to all of its

---

        resell the materials customized for Client ("MATERIALS") to its franchisees for use in student and instructor training programs. All other rights not specifically granted, including but not limited to the creation of derivative works is and shall remain vested in the Publisher. Such license shall be perpetual, irrevocable, worldwide and fully paid up.
2)  Client shall purchase from the publisher all MATERIALS for use by the Client's franchisees. Client shall only be authorized to resell MATERIALS purchased from Publisher the MATERIALS to Client's franchisees.
3)  Client will not remove, cause to be removed, obscure, deface, cover, or in any other manner obfuscate Publisher's copyright notice on the MATERIALS used by the client.
[Doc. No. 131 at ¶ 5, Exh. C].

centers and owners informing them of Sylvan's decision to discontinue use and/or promotion of the Assessments. On February 16, 2007, however, the director of several Arizona Sylvan franchises testified that she was not aware that Sylvan had directed the franchises to discontinue use of the Assessments.

Sylvan then made changes within Sylvan's system to prevent centers from printing IML Assessment results. This design change did not prevent centers from accessing or printing the Assessments. On March 27, 2007, Sylvan's manager for the Assessment tracking system, who implemented the design change, confirmed that Sylvan's centers were still capable of printing and disseminating the Assessments. To the extent any printing or dissemination of Assessments occurred, these usages would not have been recorded as there was no system in place to track such usage. Consequently, on April 25, 2007, IML sent a cease and desist letter to Sylvan, ordering Sylvan to cease copying, using, and disseminating the Assessments.

On May 4, 2007, Sylvan's Senior Director of Curriculum, the same person who sent Sylvan's January 18, 2007 letter and instructed Sylvan's manager for the Assessment tracking system to implement the aforementioned design change, testified that neither she nor anyone in her department did anything to follow-up and make sure that the franchisees discontinued use of the Assessments. On May 11, 2007, IML filed the instant motion for injunctive relief.

4

II. DISCUSSION

"To obtain a preliminary injunction, a party must show (1) that it is reasonably likely to succeed on the merits of its copyright infringement claim and (2) a likelihood that it will suffer irreparable harm if the injunction is denied. Other issues to consider if relevant are (3) the likelihood of irreparable harm to the non-moving party and (4) the public interest." Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 342 F.3d 191, 196 (3d Cir. 2003) (internal citation and quotation omitted).[2] A court will then balance these factors in order to determine if an injunction should issue. BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000) (citation omitted); see also American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n. 8 (3d Cir. 1994) (providing that despite cases holding that the latter two factors should only be considered when relevant, "district courts should award preliminary injunctive relief only upon weighing all four factors").

A plaintiff bears a "particularly heavy" burden when it seeks mandatory relief. Acierno v. New Castle County, 40 F.3d 645,

---

[2] The standard for a preliminary injunction is the same as that for a temporary restraining order. Ride the Ducks, L.L.C. v. Duck Boat Tours, Inc., No. 04-5595, 2005 WL 670302, *4 (E.D. Pa. March 21, 2005) (citation omitted).

653 (3d Cir. 1994); Serrano v. Folino, No. 05-1118, 2007 WL 906184, at *2 (W.D. Pa. March 21, 2007) (citation omitted). "The decision to grant or refuse to grant a preliminary injunction is within the discretion of the district court." Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1242 (3d Cir. 1983). The court will discuss each of the four factors in turn.

A. Success On The Merits

"It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking [injunctive] relief to make a [p]rima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) (citations omitted).

To prove copyright infringement pursuant to 17 U.S.C. § 501, the plaintiff must demonstrate two elements: (1) ownership of a valid copyright and (2) copying by the defendant. Dam Things From Denmark v. Russ Berrie & Co., 290 F.3d 548, 561 (3d Cir. 2002), citing Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1231 (3d Cir. 1986). Here, Sylvan argues that IML has failed to establish any actual copying of the Assessments since its January 18, 2007 letter. However, the evidence does not support sylvan's argument.

There is no dispute that Sylvan terminated its relationship with IML, at the latest, in January of 2007 and that

any use of the Assessments after that time was, therefore, unauthorized. There is also no dispute that Sylvan's centers still had access to the Assessments in May of 2007. Sylvan essentially admits that by the first part of May 2007, it had done little (if anything) to ensure that its franchisees discontinued use of the Assessments. Furthermore, between January and May 2007, Sylvan could have accessed, copied and distributed the Assessments without such access or use being tracked. Under these circumstances, it is reasonable to conclude that unauthorized use of the Assessments occurred sometime after January of 2007. As such, IML need not present concrete evidence of copying of the Assessments by Sylvan. See Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir. 1986). Accordingly, the court finds that IML has sufficiently met its burden on this first element.

B. Irreparable harm

"In order to demonstrate irreparable harm[,] the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "[A]n irreparable injury is one that is not remote or speculative, but actual and imminent and for which monetary damages cannot adequately compensate." FMC Corp. v. Control Solutions, Inc., 369 F. Supp.2d 539, 573 (E.D. Pa. 2005)(citations and internal quotations omitted).

7

A showing of a prima facie case of copyright infringement, or reasonable likelihood of success on the merits, raises a presumption of irreparable harm. Apple Computer, 714 F.2d at 1254. The Court of Appeals for the Third Circuit has gone so far as to say that "[a] copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm." Apple Computer, 714 F.2d at 1254 (citing 3 Nimmer on Copyright § 14.06[A], at 14-50, 14-51 & n.16 (collecting authorities)). Here, as discussed supra, IML has made out a prima facie case of infringement and, therefore, is entitled to a rebuttable presumption of irreparable injury. See Educ. Testing Servs. v. Katzman, 793 F.2d 533, 543-44 (3d Cir. 1986); Apple Computer, 714 F.2d at 1254.

To rebut the presumption of irreparable harm, Sylvan raises the following four arguments: (1) IML's delay in sending its cease and desist letter to Sylvan regarding continued use of the Assessments demonstrates that IML is not in danger of suffering irreparable harm; (2) IML has not alleged that any actual copying has occurred or will occur, only the potential for copying; (3) IML made similar materials available to the general public on its website; and (4) Sylvan is not copying the Assessments and has represented that it will not do so.

1. Delay

Sylvan argues that a near four-month "delay" in seeking

injunctive relief undermines IML's claim of irreparable harm.[3] Sylvan, as the party asserting laches as an affirmative defense, must establish (1) an inexcusable delay in bringing the action and (2) prejudice. See In Re Mushroom Transp. Co., Inc., 382 F.3d 325, 337 (3d Cir. 2004) (citation omitted).

"An unreasonable delay in seeking an injunction negates the presumption of irreparable harm." FMC Corp., 369 F. Supp.2d at 582. However, "[w]hile courts have denied injunctive relief based on laches, the laches defense is reserved for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence." Id.(citations and internal quotations omitted).

IML responds that any delay occurred as a result of its investigation of the merits of the case. IML provides a time line of its actions from the time it received Sylvan's termination letter (January 18, 2007) up to the time it sent a cease and desist letter to Sylvan (April 25, 2007) and ultimately filed its motion for a temporary restraining order and injunctive relief (May 9, 2007).

"[A] delay caused by a plaintiff's good faith efforts to investigate an infringement or to determine how serious an infringement is does not preclude a finding of irreparable harm."

---

[3] Sylvan's "delay" argument constitutes a laches defense.

9

BP Chemicals, 229 F.3d at 264 (internal quotations and citations omitted); see also FMC Corp., 369 F. Supp.2d at 582 (holding that a plaintiff's "conscientious decision to fully investigate the very serious infringement charges before filing suit will not give rise to a viable laches defense") (internal quotations and citation omitted).

Here, the court finds that IML's "delay" in filing the instant motion constitutes a good faith effort to investigate the merits of this action and to determine how serious the infringement was (or is). The court, therefore, finds that any alleged "delay" by IML was excusable and fails to negate the presumption of irreparable harm.

　　2.　Actual and imminent harm

Second, Sylvan argues that IML has not identified any admissible evidence that such copying and use has actually occurred or is likely to occur in the future, and thus IML has not met its burden to show actual and imminent irreparable harm.

A plaintiff need not establish the occurrence of actual harm but "potential harm." Instant Air Freight, 882 F.2d at 801. As discussed above with regard to IML's likelihood of success on the merits, IML has established the threat of potential harm if an injunction does not issue.

### 3. Public access to copyrighted materials

Third, Sylvan argues that IML has made similar materials available to the general public for free via its Internet web site, which, according to Sylvan, undermines IML's assertion of irreparable harm.

As the owner of the copyright, however, IML retains the exclusive rights to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. 17 U.S.C. § 106. Accordingly, Sylvan's argument is without merit and fails to rebut the presumption in favor of irreparable harm.

### 4. Sylvan's intent not to infringe

Finally, Sylvan argues that injunctive relief is not necessary here because it has taken all reasonable actions to diminish and then stop use of the Assessments. An infringer's "professed intent to 'stop' infringing is not a legally adequate basis to deny the preliminary injunction." Basic Fun, Inc. v. X-Concepts, LLC, 157 F. Supp.2d 449, 457 (E.D. Pa. 2001) (drawing the conclusion that "[i]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [movant] substantial protection of its trademark") (quoting Polo Fashions, Inc., 793 F.2d at 1135-36).

Here, the court finds that Sylvan's representation to take all reasonable actions to diminish and then stop use of the Assessments fails to rebut the presumption of irreparable harm. If Sylvan intends not to infringe, as it represents, then injunctive relief preventing it from doing that which it has no intention to do causes little harm.

As such, the court finds that Sylvan has not rebutted the presumption of irreparable harm.

C. <u>Balance Of Harms</u>

Sylvan has not convincingly demonstrated that it will be subjected to greater harm if the requested injunction is granted than IML will suffer if it is not. Sylvan posits that it would suffer disproportionate harm because IML's requested relief requires Sylvan to take action beyond its rights as recited in its agreements with its franchises and to incur tremendous expense. An injunction, however, should not be denied due to the effect it would have on the defendant's business. "If that were the correct standard, then a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone." Apple Computer, Inc., 714 F.2d at 1255.

Sylvan's admitted failure to perform any follow-up with its centers regarding the discontinued use and elimination of IML's materials undercuts Sylvan's argument that injunctive relief is not

warranted here. Moreover, some of the injunctive relief sought by IML would be less onerous to Sylvan had Sylvan incorporated the Assessments into its EOS System as required by the Second Addendum. As such, the balance of hardships tips in favor of issuing the requested injunctive relief.

D.  Public interest

"The public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in a protected work." AMC Tech., L.L.C. v. SAP AG, 2005 WL 3008894, at *12 (E.D. Pa. Nov. 3, 2005)(citing Apple Computer, 714 F.2d at 1255). "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff". American Tel. and Tel. Co., 42 F.3d at 1427 n. 8.

Accordingly, the public interest is best served by protecting IML's Assessments.

III. CONCLUSION

On balance the four factors, when applied to the facts presented here and weighed in conjunction to each other, favor granting IML preliminary injunctive relief. See FMC Corp., 369 F. Supp.2d at 554.

13

IML's Amended Motion for Temporary Restraining Order and Preliminary Injunctive Relief [Doc. No. 106] will be granted in part and denied in part. Certain of the relief requested in IML's motion, however, is more appropriately sought through discovery.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INSTITUTE FOR MOTIVATIONAL LIVING, )
INC., )
)
Plaintiff, )
)
vs. ) Civil Action No. 06-0828
)
SYLVAN LEARNING CENTER, INC., )
)
Defendant. )

ORDER

And now, this 7th day of February, 2008, IT IS HEREBY ORDERED that plaintiff's amended motion for temporary restraining order and preliminary injunctive relief [Doc. No. 106] is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED THAT defendant Sylvan Learning Center, Inc., as well as its officers, directors, counsel, agents, employees, successors, and assigns immediately notify each of its current corporate-owned centers and franchisees as well as those that existed in January of 2007 that defendant Sylvan has been directed by this Order to discontinue use of any and all IML Assessments, IML reference materials and/or IML training materials, including all such materials in the custody, possession or control of any Sylvan Learning Center.

IT IS FURTHER ORDERED THAT defendant Sylvan Learning Center, Inc., as well as its officers, directors, counsel, agents, employees, successors, and assigns:

    a. Disable the capability within the EOS system that allows individual Sylvan Learning Centers to print the Assessment reports;

    b. Notify each Sylvan center, including both franchised and corporate-owned centers, to discontinue use of the EOS System until such time as the disablement of the print functionality of each center is effectuated;

    c. Reactivate the reporting function of the EOS System at each of the Sylvan Learning Centers;

    d. Destroy all CD-Rom's containing IML Assessments, IML reference materials or IML training materials, including all such materials in the possession, custody or control of any Sylvan Learning Center;

    e. Destroy all paper training materials, user manuals and paper versions of the IML Assessments that currently exist at each of the Sylvan Learning Centers;

    f. Disable all functions in the EOS System,

      Sylvan's SLC Link, or any of its on-line systems which make reference to the IML Assessments;

g.    Eliminate all references to IML and/or the IML Assessments in Sylvan's materials and documents supplied to or made available to or at any Sylvan Learning Center;

h.    Gather and collect all previous versions of the EOS system that referred to any IML Assessments, reports or materials to prevent any future reinstallation of the version of the EOS software containing access to IML materials, including the Assessments; and

i.    File with the court a declaration attesting to Sylvan's compliance with subsections (a) through (h) of this Order on or before March 14, 2008.

IT IS FURTHER ORDERED THAT plaintiff's amended motion for temporary restraining order and preliminary injunctive relief [Doc. No. 106] is DENIED to the extent that the plaintiff requests the following relief against Sylvan:

> j. That Sylvan provide an accounting of every IML Assessment that has been accessed and/or printed by the Centers since January 18, 2007; and
>
> k. That Sylvan provide an accounting of every use of the IML Assessments after January 18, 2007.

/s/ Gary L. Lancaster
Gary L. Lancaster
United States District Judge

cc: All counsel of record